HOLLIDAY *v.* MARYLAND CASUALTY CO.

[75 South. 764, Division B.]

1. LIBEL AND SLANDER. *Words libelous per se.*

Where an insurance company issued a circular letter to its agents not referring to plaintiff by name, but referring to him as follows: "Living in a southern state, a hard drinker, a habitual carrier of fire arms, reputed to be twice a man killer, minus one foot when insured, none of these facts except the lost foot given us; represented by agent as a good risk, recently shot off his other, and makes claim accordingly." This language was not libelous *per se,* where plaintiff in his declaration substantially admitted all the statements therein, except that he denied he had killed two men, and claimed he had killed only one man, since the language used does not charge him with designedly shooting off his remaining foot for the insurance, but is consistent with an accidental shooting.

2. LIBEL AND SLANDER. *Charging special damages.*

A circular letter by an insurance company addressed to its agents only and not libelous *per se* is a qualified privilege communication and a declaration thereon for libel and slander was insufficient where it does not specifically state that any particular person, other than defendant's agents, ever saw or heard of the circular and did not allege except in a general way wherein plaintiff was injured in business or reputation.

APPEAL from the circuit court of Madison county.
HON. W. H. POTTER, Judge.

Suit by T. C. Holliday against the Maryland Casualty Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*H. B. & J. W. Greaves,* for appellant.

The last charge is the one charge which appellant is aggrieved at. Appellant claims that this last charge, that he shot off his other foot and made claim accordingly, in-

dicated to any ordinary man's mind, not accustomed to splitting hairs to find excuses to let a man out of trouble, conveys the idea of moral turpitude and also a transgression of the criminal laws: First, that a man would collect seven thousand, five hundred dollars, the amount of the insurance, which he knew that he was not entitled to; second, that he would lie in order to collect this insurance and thus transgress the criminal law against perjury; third, would obtain under false proceedings the sum of money for which he was insured.

This last quoted paragraph from the objectionable letter, suggests moral turpitude and a transgression of the criminal law is liberlous *per se.* As to the construction of the paragraph note *Canduan* v. *Mille,* 98 Wis. 164.

It will not do to be too highly technical in order to arrive at a conclusion that the construction of the words used in the circular might be susceptible of two constructions and to give it the construction that he does, that it was a harmless suggestion that his leg was shot off accidently without any moral turpitude being attached to Holliday, when it is apparent to the ordinary person that the inference necessarily gathered from the language, to an unbaised mind is that it was intended to directly charge that appellant in this case deliberately shot off his leg. It won't do for the court to be highly technical and hair-splitting in undertaking to construe the language used to exonerate the appellee.

The court holds: "It is the duty of the court to see what the rest of mankind sees and to understand the meaning of the writing as the rest of mankind understands it, and to place itself in the position of any unbiased reader of ordinary intelligence and thus determine the meaning which the language, considered in its proper sense, was intended and calculated to convey. See *Hothkiss* v. *Olmsted,* 37 Ind. 74; *Tillman* v. *Robins,* 68 Me. 295, s. c. 28 Am. Rep. 50, 85 Am. Dec. 456, 18 Am. Rep. 466, 56 Miss. 808.

Written words charging a person with a crime are libel-ous *per se* whether the crime be a felony or a misde-meanor. See *Ivy* v. *Pioneer Sav. etc. Co.,* 113 Ala. 349, s. c. 21 So. 531; See 47 Am. St. Rep. 737. *Palmer* v. *Concord,* 48 N. H. 211, 97 Am. Dec. 605, 47, Am. Rep. 183, 21 L. R. A. 493; 11 L. R. A. 725; 31 Am. Rep. 757; Also see Am. & Eng. Enc. of Law, 188; *McLaughlin* v. *Fisher,* 136 Ill. 111, a good case; *Parker* v. *Detroit Free Press,* 1 L. R. A. 599; *Hansen* v. *Krehbiel,* 64 L. R. A. 790, See last para-graph of opinion, page 794; See, also, 12 Am. St. Rep. 696.

Words that tend to expose the plaintiff to public hatred, odium, contempt, ridicule, aversion, ostracism, degrada-tion or disgrace and cause him to be lowered in the mind of right thinking people and deprived of their friendship society or respect are libelous and actionable *per se.*"

If the last paragraph quoted, "Recently shot off his other foot and makes claim accordingly" does not tend to do all of this, then what would? See the case of *Obaugh* v. *Finn,* 4 Ark. 110; s. c. 37 Am. Dec. 773; *Rice* v. *Simmons,* 31 Am. Dec. 766; *Augustus Evening News* v. *Radford,* 91 Ga. 494; *Kirkpatric* v. *Eagle Lodge,* 26 Kan. 384; 40 Am. Rep. 316; 52 Am. Rep. 768; *Smith* v. *Smith,* 3 L. R. A. 52. This is a good case. See 8 L. R. A. 214. The question of libel or no libel in civil action is one of law which the court must decide, where the publication is ad-mitted, and the words are unambiguous and admit of but one construction, otherwise where two can be placed upon it, then it is a question for the jury. See *Moore* v. *Francis,* 8 L. R. A. 214.

The question of good faith in the publication is for the jury and not for the court. *Hinman* v. *Hare,* 104 N. Y. 641, See, also, *Morey* v. *Morning Journal Association,* 9 L. R. A. 621. It is not necessary that the charge should be made in express terms in order to be actionable *per se.* See *Rebo* v. *Fuller,* 84 Tex. 450; s. c. 31 Am. St. Rep. 75. A libel may be made in the form of insinuation, allusion,

irony, or questions as well as in positive and direct terms. See *Wafford* v. *Meek,* 129 Ala. 349; s. c. 30 So. 625. The manifest intention of the circular issued is to charge Holliday with being a swindler and a liar. "It is libelous *per se* to charge a man with being a swindler." See *Canduan* v *Miller,* 98 Wis. 164.

The next question: No name being called, are we entitled to recovery? On this question the decided weight of authority is that the libelous language need not name the plaintiff as the person to whom it refers. It is sufficient if the fact that the plaintiff is the person intended to be libelled, can be ascertained from the words of description or other references made by the publication, or even if it can be shown by extrinsic facts and circumstances. See the case of *Lethrop* v. *Lumberg,* 55 Wash. 144. This case sustains our contention that plaintiff's name need not be mentioned in order to justify a recovery. In that case, a recovery was permitted where the plaintiff, in his declaration showed that it was intended for him and brought himself within the terms of the circular in his declaration. The same circular was also under consideration in the same court, in the case of *Dunlap* v. *Lumberg,* the same volume, 55 Wash. 609, also reported in 133 Am. St. Rep. 1050.

I have read the originals of both opinions delivered by the same court. In the first opinion, a right of recovery was conceded. In the second case, the demurrer to the declaration was sustained because the court said that by the declaration the plaintiff showed that he did not belong to the class referred to. See also the case of *Weis* v. *Hoss,* 6 Ala. 881; *Colvert* v. *Black,* 110 Ga. 642."

"It is sufficient if those who know the plaintiff can understand from the language used that he is the person referred to." *Lewis* v. *Soul,* 3 Mich. 514. See, also, the case of *Duviver* v. *French,* 105 Fed. 278. See, also, *Northrop* v. *Tibbles,* 215 Fed. 99. The last case cited a number of authorities in point here.

It goes without saying that this paragraph is libelous *per se* and also that it is for the jury to determine whether it applies to appellant or not. The remaining question is whether the communication was a privileged communication. The declaration alleges that the letter was addressed to its agent and others.

Again, if this letter was written in malice and directed to the agents and no other persons, and was carelessly and negligently handled by the agents to such an extent that other persons were allowed to peruse this circular, it was not privileged and defendant, appellee is not protected on this point. See the following cases: *A. & V. R. R. Co.* v. *Brooks,* 69 Miss. 168 and authorities grouped in opinion at top of page 158; *Hinds* v. *Shoemaker,* 97 Miss. 669, very much in point here; See, also, 104 Am. St. Rep. 110 and cases cited. See, also, recent case of *Pate* v. *Trollinger,* 74 So. 131, Adv. Sheet, Mch. 24, 1917.

We respectfully submit, on the authorities, that this case being heard on demurrer, admits the allegations of the bill, (while of course, not admitting the law); it is up to this court to determine the allegations of the bill being true, whether or not the appellant has a right to have his case submitted to a jury, and we respectfully submit that the court had no right to take this case from the jury on the demurrer and that this case should be reversed for trial.

*McLaurin & Armistead,* for appellant.

We are pressed with the inquiry as to whether or not the letter was libelous *per se.* If it was libelous *per se,* of course, no special damages are required to be shown or proven. The court below even admits this much. We respectfully submit that the letter is libelous *per se* for two reasons: first, it charges the common-law offense of self-mutilation. This will be clearly shown by reference to 26 Cyc., p. 1601, under the head of "Mayhem," we find

the following text: "The crime may be committed by a
white man on the body of a slave, and the statutes are held
to give the same protection to the internal organs of the
female as to the external organs of the male.  Under early
English statutes which were directed against the maiming
of others, it was held that if one maimed himself or pro-
cured himself to be maimed, both he and the party by
whom the maim was effected were subject to fine and im-
prisonment."   Citing in support of this case _Wright's
Case,_ Coke Litt, 127; 1 Hale, P. C. 412; 11 Jac. 1.   The
same doctrine is announced in 20 A. & E. E. of Law page
247, and cases cited.  Second, the letter is libelous _per se_
because it charges the party referred to necessarily with
false pretenses.  The letter on its face shows that it has
reference to the fraudulent collection of indemnity for
accidents, and it necessarily follows, we respectfully sub-
mit, that if a party to do this shoots off his foot and makes
claim accordingly, he must be guilty of false pretenses,
because such conduct would not be in keeping with an acci-
dent for which he would be entitled to be indemnified
under the contract in question.  _State_ v. _Hubanks,_ 99
Miss. 775.

As shown above, the declaration shows the letter was
sent not only to agents, but to others, and even if it was
a qualified privilege as between the agent and the princi-
pal, it would not be qualified if sent to others, or if care-
lessly permitted to be seen by others.  We submit, how-
ever, that even if sent to the agent, that the publication
was excessive and unnecessary.  In the first place, it is
definitely settled that the plaintiff need not be named in a
libelous publication if by means of description or refer-
ences therein, or by extrinsic facts and circumstances,
sufficient information is imparted to show who was re-
ferred to, see, 25 Cyc., p. 362, and authorities cited.  Fur-
thermore, to constitute a publication it is not necessary
that the facts or libelous charges should be made known to

the public generally.    It is enough if they are made known to a single person. 25 Cyc. p. 366.

In reference to sending a letter to an agent, we find in 25 Cyc., p. 369, the following text: "If a person composes a libel and send it to his agent, to be read by him, and it reaches its destination and is read by such agent, it is a sufficient publication to support an action," citing a number of cases in support of this doctrine.    Want of actual intent to injure the party libeled is no excuse for the defamatory matter and is actionable *per se*. The malice will be conclusively presumed. 25 Cyc., p. 271.

In the case of *Rogers* v. *Kline,* 56 Miss. 888, it was held that the injury was the same whether the article is the result of malice or of carelessness and malice.    Even if it could be shown that the libelous letter or circular was privileged and was intended only for agents, yet the declaration is sufficient and the effect would only be to put the burden of proof upon the plaintiff to offer some evidence of malice beyond the mere falsity of the charge. This was clearly settled in the case of *A. & V. Railway Co.* v. *Brooks,* 69 Miss. 168.

*W. H. & R. H. Powell,* for appellees.

The appellant, by his declaration has impaled himself upon the horns of a dilemma.    "In order to identify himself with the subject of these characteristics, he must admit, that he answers to such characteristics, or in other words that the cap fits him, in which case the statement would be truthful and therefore not libelous.    Conversely, if he does not possess those characteristics, manifestly he is not the person referred to."

The letter does not show malice *"per se"* and is a perfectly legitimate communication from the president to the agent of appellee.    This learned court has lately decided that: "Where a letter between parties having business relations was not libelous *per se* and did not go beyond the

exigencies of the occasion, the burden of proof shifted to the plaintiff acclaiming he was libelled by such letter, to prove malice in fact.'' *Lucas E. Moore Staves Co.* v. *Wells,* 72 So. 228.

'Tis true, that in this case the testimony was heard, but the same rule must apply in the case at bar, because, aside from the conclusions of the pleader, the declaration when construed with the whole letter made an exhibit, manifestly shows no malice in fact against appellant or any other person.   It shows the exigencies of the occasion were not exceeded.

''The authorities, as a rule, define 'libel' as a false and unprivileged publication which exposes any person to hatred, contempt, ridicule, or obloquy, to which may be added, or which causes him to be shunned or avoided, or which has a tendency to injure him in business.''   Ib. 230.

In the Mississippi case of *Hines* v. *Shumaker,* 52 So. 705, the court said: ''Where the communication is upon a privileged occasion and is a privileged communication, the burden is upon the plaintiff, of course, to show actual malice in order to recover, but if the privilege of the communication is not conceded, and does not appear from the plaintiff's testimony as is the case here, the burden is then upon the defendant, who relies upon the privilege, to establish it.   *Abraham* v. *Baldwin,* 52 Fla. 151, 42 So. 591, 10 L. R. A. (N. S.) 1051, In Odgers on Slander and Libel, pp. 286, 287, stated as follows: *Abraham* v. *Baldwin,* 52 Fla. 156, 42 So. 592, 10 L. R. A. (N. S.) 1051.

While ordinarily, privilege is a defense to an action for libel, which must be affirmatively pleaded, yet if the complaint show on its face that the publication was privileged, the point may be raised by demurrer.   *Gosewisch* v. *Doran,* 119 p. 656.   3 American Digest, Key-Number Series, p. 1348, para. 97.

Whether a libelous signification could be attributed to the words used was properly determined on demurrer

to the complaint. *Trimble,* v. *Anderson,* 79 Ala. 519; 32 Am. Dig. Century Ed. Column 2192k, par. 234, (C) Lib. & Sland. The defendant may demur to a part of the words laid in a court for slander. *Abrams* v. *Smith,* 8 Blackf. 95; Ib., Column 2192, para. 234 (e).

In an action for libel the defendant may test the actionable quality of the words by demurrer, and to that extent only is his pleading to be construed as an admission of the allegations of the complaint. *Gunning* v. *Appleton,* 58 How. Prac. 471; Ib. Column 2194, Para. 235 (j); *Wellman* v. *Sun Printing & Publishing Co.,* 66 Hun. 331, 21 N. Y. Supp. 577; 50 N. Y. State Rep. 254; *Fry* v. *Bennett,* 7 N. Y. Super. Ct. (5 Sandf.) 54; Ib.· Column 2195, para. 236 (c); 6 Ency. Pl. & Practice, page 336; *Schulze* v. *Jalonick,* 18 Texas Civ. App. 296, 44 S. W. 580, 36 L. R. A. (N. S.) 450; 10 L. R. A. (N. S.) 1052, para. 2.

"In determining whether or not the communication is privileged, the nature of the subject, the right, duty or interest of the parties in such subject, the time, place, and circumstances of the occasion should be considered." *Abraham* v. *Baldwin,* 52 Fla. 156, 42 So. 592.

Now, we submit that the letter discloses the nature of the subject and the right, duty and interest of the writer as president of the company and of the addressees. It was perfectly proper for the president of the company to advise the agents of defendant about the subject in which all had a real interest, and he had a right to use an impersonal illustration of the characteristics to be avoided. His failure to. name the plaintiff is conclusive evidence that he had no "malice *per se*" to plaintiff, for if he had had and desired to certainly injure him, he would have named him as the person who possessed such characteristics.

"Where words imputing misconduct to another are spoken by one having a duty to perform, and they are spoken in good faith and in the belief that the speaking is

in the discharge of that duty, or where they are spoken in good faith to those who have an interest in the communication, and a right to know and act upon the facts stated, no presumption of malice arises, and therefore, no action can be maintained on them, without proof of express malice." *Sands* v. *Robinson,* 12 S. & M. 704.

"A letter written confidentially, under the impression that its statements are well founded, if the writer was acting *bona fide,* with the view to the interest of himself or the person to whom it is written though it contains matter which would otherwise be libelous, is protected as a confidential communication, and is not libel." *Torrence* v. *Hurst,* Walker's Miss. 403. In L. R. A. 2131: *Sunderlin* v. *Bradstreet,* 46 N. Y. 191; *Harrison* v. *Bush,* 5 El. & Bl. 344; *Briggs* v. *Garrett,* 2 Cent. Rep. 364, 111 Pa. 404; Newall on Defamations; 2 Slander & Libel (2 Ed.), Pa. 388; 18 Am. & Eng. Enc. of Law (2 Ed.) 1037; *King* v. *Patterson,* 49 N. J. L. 438, 22 Atl. 193, 26 Am. St. Rep. 432, 13 L. R. A. 655; *Holmes* v. *Clisby,* 121 Ga. 241, 48 S. E. 934, 104 Am. St. Rep. 103; *Holmes* v. *Knox,* 23 Fla. 595, 3 So. 211; *Allen* v. *Cape Fear, etc., R. Co.,* 100 N. C. 397, 6 S. E. 105; *Briggs* v. *Garrett,* 111 Pa. St. 414, 2 Atl. 513, 56 A. Rep. 274."

COOK, P. J., delivered the opinion of the court.

The appellant filed suit in the circuit court of Madison county, a demurrer to the declaration by the defendant; the demurrer was sustained; the plaintiff filed an amended declaration, and the demurrer to same was also sustained, and plaintiff appeals.

It is unnecessary to set out in this opinion the first declaration. The amended declaration, omitting the formal parts, was as follows:

"For that, whereas, the plaintiff, T. C. Holliday, before and at the time of the committing by the defendant of the several grievances hereinafter mentioned, was a

person of good name and reputation, and deservedly enjoyed the esteem and good opinion of his neighbors and other worthy citizens in the city of Canton, in the county of Madison, and in the state of Mississippi, and of other worthy citizens and business acquaintances in other parts of the state and outside of the state, yet the defendant, well knowing the premises, but contriving and maliciously intending to injure the plaintiff and to bring him into public scandal and disgrace, on the 22d day of August, 1914, and shortly subsequent thereto in a certain circular letter which the said defendant had printed and directed 'To Each Agent,' as will be shown by a copy of said letter herewith filed, marked Exhibit A and made a part of this declaration, which circular letter, although not calling the name of plaintiff, did directly, specifically, and intentially refer to plaintiff in paragraph A therein, which said paragraph is as follows:

"A. 'Living in a Southern state, a hard drinker, a habitual carrier of firearms, reputed to be twice a man-killer, minus one foot when insured, none of these facts, except the lost foot, given to us; represented by the agent as a good risk; recently shot off his other and makes claim accordingly. Our claim investigator discovered the above characteristics.'

"The defendant in writing did willfully and maliciously and wantonly, and with the malicious design to injure plaintiff in his reputation and to mortify and humiliate him in his business, circulating and publishing said circular letter with paragraph A therein, meant and intended by said paragraph A to refer to plaintiff, and had no other person in mind when it made said publication. And defendant did willfully and maliciously and with a wanton desire to humiliate, mortify, and bring plaintiff into disrepute and disgrace, charged by said circular and by said paragraph A above referred to that plaintiff (deliberately) shot off his said foot (for the purpose of collecting said insurance); and said defendant did, at the

time aforesaid, mail, circulate, and excessively publish said circular letter containing the said false, scandalous, and malicious language, to his local agent and others, in many towns and cities in the state of Mississippi, and in other states.   The recipients of many of these letters, and particularly the agents of the said. defendant company in Canton, and other places, who were personally acquainted with plaintiff, and who knew that plaintiff had sometimes in the past been in the habit of drinking to excess, and knew that plaintiff had some years before been involved in a personal difficulty, which caused plaintiff great uneasiness about his personal safety, and who, in order to protect himself, sometimes went armed, and who knew that plaintiff himself was finally compelled to kill his adversary in a personal encounter, the same being the culmination of the above difficulty, and for which no indictment was ever returned against plaintiff, and which said agents and other persons who received said letter also knew plaintiff had lost one foot in said difficulty, and that plaintiff only had, when he obtained insurance from the defendants, one foot, and that plaintiff had recently lost that foot, and parties receiving said circular letter in other cities and towns in the state of Mississippi, of whom there were many, understood the said libelous matter to refer to this plaintiff.   By means of the committing of the said several grievances by the defendant, and especially in charging the plaintiff with willfully and designedly shooting off his remaining foot for the purpose of procuring the insurance thereon, the plaintiff has been and is greatly injured in his good name, credit, trade, and business, and has fallen into great discredit among his neighbors, friends, and acquaintances and of whom he was accustomed to enjoy their confidence, companionship, and respect, to his great humiliation, chagrin, and mortification, and to the actual damage of plaintiff in the sum of ten thousand dollars, and plaintiff claims by way of punishment to defendants for their

willful and wanton and libelous conduct punitive damages in the sum of ten thousand dollars, in all, actual and punitive damages, the sum of twenty thousand dollars."

The demurrer to this declaration was general and specific, raising the law points we will take up in this opinion.

The opinion of the trial judge sustaining the demurrer is in these words, viz.:

"This is an action founded upon an alleged libelous circular letter, sent out by the president of the defendant corporation, and addressed to each agent. This circular is an advisory letter, and upon its face is apparently intended to prevent the acceptance of risks, by agents, deemed undesirable by the management, and is qualifiedly privileged, if confined to, and sent out alone to defendant's agents. The declaration, however, avers that the letter was mailed out to agents and others, and was received by them, and that its publication was excessive, and so exceeds the privilege. While no name is mentioned in the letter, it is fully charged that it was written of and concerning the plaintiff, with a malicious design to injure him. The only serious question presented is whether the letter is libelous *per se*. If it is there is no necessity to show special damage resulting from the publication. But if not, it must be shown to be knowingly false, published with malicious motive, and that special damage was sustained. "The declaration under consideration does not set out special damage, within the accepted meaning of that term. It therefore appears that whether the declaration is good against demurrers depends upon whether the words alleged to be libelous are so in themselves. The words claimed to be libelous, taken from the letter that is made an exhibit to the declaration, are: 'A hard drinker, a habitual carrier of firearms, reputed to be twice a man-killer; minus one foot when insured'—and, standing alone, might of themselves be calculated to bring plaintiff into bad repute; but when

the letter is made a part of the declaration, the whole letter should be considered, as well as the fact that plaintiff's name is not mentioned. *Rodgers* v. *Kline,* 56 Miss. 808, 31 Am. Rep. 389. The letter charges no one with a violation of any criminal law, is not abusive, charges no dishonesty or moral turpitude; and considering the letter alone, it bears no indication of malice, or that any one is intended to be held up to scorn or ridicule. In addition to this, the plaintiff, in his declaration, admits that he had in the past been in the habit of drinking to excess; that for his protection he sometimes went armed; that he had killed a man; and that he had but one foot. So that the admissions are almost as broad as the paragraph complained of as being false.

"Considering the letter as a whole, and the admissions made by the plaintiff, and the absence of a showing of special damages in the declaration, I think the demurrer should be sustained."

It is clear that the circular letter is not libelous *per se,* and is only made so by the averments of the declaration. The circular says, that example B "recently shot off his other foot and makes claim accordingly." This statement is not denied; it is not charged that it was false, but plaintiff says that the defendant willfully and designedly charged plaintiff with shooting off his remaining foot for the purpose of procuring the insurance thereon. This is an inference not warranted by the language of the circular. In fact, plaintiff admits that example B fits him exactly, and everything said is literally true, except he denies that he had killed two men, and asserts that he had killed only one man. As we construe the declaration, the plaintiff admitted that he had killed one man, that he had been guilty of the excessive use of ardent spirits, and that he had (accidentally) shot off his remaining foot and made claim accordingly; that he lived in a Southern state. Nothing more appears in the circular.

It will be noted that the declaration does not specifically state that any particular person, other than defendant's agents, ever saw or heard of the circular; it is not alleged, except in a general way, wherein and with whom he was injured in his business or reputation. The circular was a qualified privileged communication, not libelous *per se,* and to render same libelous the pleadings must specifically set out the facts which will be proven to establish the libelous character of the writing; mere generalizing is not sufficient. Before he could recover he had to prove wherein and with whom his business or reputation suffered, and, this being true, it is necessary that he plead it. *Johnson* v. *Robertson,* 8 Port. (Ala..) 486.

In this case plaintiff could only recover special damages, and he cannot recover special damages without naming in his pleadings the persons who read the circular and with whom he suffered in his business or reputation. It is necessary to point out with reasonable precision his special damages. *Linden* v. *Graham,* 1 Duer (N. Y.) 672; *Kendall* v. Stone, 5 N. Y. 14. "In an action for slander or libel, no evidence of special damages can be given unless the same is alleged in the declaration." Ency. Pleading & Practice, vol. 1, p. 771.

As we construe the case made by the declaration, it appears that the alleged libelous publication was a privileged communication; that it was not libelous *per se.* The plaintiff did not allege special damages, and it therefore follows that the demurrer to the declaration was properly sustained.

*Affirmed and dismissed.*