### WOODVILLE *v.* PIZATTI.

[80 South. 491, Division A.]

1. LIBEL AND SLANDER. *Words actionable. Imputing crime.* ˋ

All words charging a person with the commission of a crime are not actionable *per se,* but only such as charge him with the commission of an act which, if true, would subject him to punishment, for a crime involving moral turpitude, or would make him liable to a punishment infamous in character, or to one which, if not necessarily infamous, would bring disgrace upon him.

2. LIBEL AND SLANDER. *Words imputing larceny.*

A statement that there had been an inventory taken of everything in the house from which plaintiff had moved, that all the "stuff" on the list was not there, but that plaintiff had taken a part of it away, did not necessarily imply that the taking by plaintiff of a part of the "stuff" from the house was with any criminal intent whatever.

APPEAL from the circuit court of Harrison county.
HON. J. H. NEVILLE, Judge.

Suit by Mrs. Frances Pizatti against Mrs. John Alonzo Woodville. From judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. L. Taylor,* for appellant.

I submit that the words spoken are not slanderous at all, much less slanderous *per se.* The appellant contends that the words alleged were not spoken at all. No damages were shown in this case and there can be no recovery for punitive damages where the spoken words are not slanderous *per se,* I contend, and will cite an abundance of authority in support of this contention.

Where the subject of an alleged libel. is not actionable *per se,* the plaintiff can recover only upon proof of special damages which are the natural, immediate, and legal consequences of the charge, and due exclusively to its publication by defendant. See *Taylor* v. *Mosely* (Ky.), 1918B, 1125.

Now are the words alleged to have been spoken slanderous *per se?* In the case of *Wooten* v. *Martin,* 140 Ky. 781, 131 S. W. 783, we find: "It is not actionable to say that a person 'took' a certain thing, if the circumstances were such that the taking would not be larceny." In the case of *Phillips* v. *Bradshaw,* 167 Ala. 199, 52 So. 662, we find: "In the law of slander, any words that impute to one the commission of larceny are not actionable *per se.*" But in the instant case, no one is charged with any crime at all. The words alleged to have been spoken are not actionable under the statute which enlarges upon the common law, and they are therefore not slanderous *per se,* and not being slanderous *per se,* and no damages at all having been shown, then the verdict is certainly contrary to the law and the evidence. But again, Mrs. Pizatti contends that the property was hers and therefore she could not be imputed to have stolen from herself, even if, the words that were alleged to have been spoken were spoken. Mrs. Woodville's husband was simply the executor, and Mrs. Pizatti claimed the property. Now could any crime of larceny be imputed at all? None was. Again there is a difference between libel and slander as to words being actionable *per se.* See 116 Am. St. Rep. 804; and also 113 Mo. App. 216, 87 S. W. 565 at page 568.

So I contend that the verdict was contrary to the law and the evidence, and this being true, the court erred in not granting the peremptory instruction asked for by the defendant and which is assigned as second

error.  If no damages were shown and the words alleged to have been spoken were not slanderous *per se,* and I contend that both are true, then the trial court should have given the peremptory instruction asked for by defendant.

*Mize & Mize,* for appellee.

We submit that under the case of *Railway Co.* v. *Brooks,* 69 Miss. 168, the words established—"that she, Mrs. Woodville, did not find in the house everything that was inventoried, and that Mrs. Pizatti had taken property out of the house," constitute a cause of action, and the language in said instruction "that did not belong to her," with no proof to support it, if erroneous, is without damage to the appellant, for the reason that sufficient words were proven and submitted to the jury for their consideration in said instruction, which, if believed by them, would constitute a cause of action, hence there was no harm in submitting in said instruction the phrase that was not proven.

In the *Brooks case, supra,* the alleged libelous letter is stated at page 170, as follows:

"Messrs. Dabney & McCabe, City.

"Gentlemen:

"I have yours of the 16th, inclosing very modest claim for only one thousand one hundred and fifteen dollars on account of the alleged loss of J. S. O. Brooks' valise.

"I have investigated this matter thoroughly, and find that this claim is based simply on Mr. Brooks holding one of our checks.  This valise, together with his trunk, arrived at Vicksburg, O. K. and he simply walked off with the valise without giving the baggagemaster an opportunity to take the check up, and the next day sent down the check, together with one for his trunks, and requested that we deliver this baggage.  As

the matter stands, I think that if Mr. Brooks sees fit to press his suit, we will have to take some action in regard to his taking the property away while it was in possession of the railroad company without giving up his check."

This letter, held to be libelous, simply accuses Brooks of taking a suit case under conditions which did not entitle him to take it away, whereas the language in the instant case, which the jury believed, accuses appellee of taking property out of the house that had been inventoried, which could either be larceny, contempt of court, or trespass, and the case was submitted to the jury on the proposition whether or not such accusation, if made, was made wilfully, falsely, maliciously, and with intent to defame the appellee. Every essential ingredient of slander was submitted to the jury and the jury decided against the appellant.

The cases cited by appellant's counsel are either under a different state of facts or are cases holding under the old and hard rule that the exact words laid down must be proved and hence, are not applicable here.

Besides, counsel made no objection whatever at all during the trial on the ground of variance, and it is now too late to urge this contention. The verdict is certainly moderate.

If there was ever a case where defendant ought to be punished, and punished sufficiently, this is one. The history of the Pizatti and Woodville litigation is not all in this record. Some of it was thrashed out in the Louisiana case of *Succession of Salvator Pizatti*, —— So, ——. However, this is not a part of this record, but there is sufficient of the history in this record to indicate what indignities this appellee has suffered. An old lady, living in the house that was the home of herself and husband at the time of his death, which she continues to make her home after his death, and which

she left three weeks before the occurrence complained of to go to New Orleans on a business trip connected with the estate, leaving her personal effects in the house, and returning in three weeks to the house to find the Woodvilles installed therein. A deputy from the sheriff's office is detailed to go with her to the house to see about her property, and she is met at the door by Mrs. Woodville, appellant, who asks her if she has a warrant to enter the house, to which appellee says: "What? In my own house I have a warrant?" whereupon the angry conversation follows, in which Mrs. Woodville tells Mrs. Pizatti in the presence of Miss May Pizatti and the deputy sheriff, without rhyme or reason, that she did not find in the house everything that was inventoried and that she, Mrs. Pizatti, had taken the property out of the house, imputing to appellee one of three crimes, larceny, contempt of court, or trespass.

We submit that three thousand dollars is very moderate under the circumstances. The cases cited by counsel on excessive verdict ground are not cases where character is involved, and this case goes to the character of an old lady, of sixty your years of high standing.

We submit that this case ought to be affirmed.

SMITH, C. J., delivered the opinion of the court.

This is an action for slander, in which there was a judgment for three thousand dollars for the plaintiff. One of the assignments of error is the refusal of the court below to grant the defendant a peremptory instruction.

There is a variance between the words alleged in the declaration to have been spoken by the defendant and those testified to by the plaintiff's witnesses, which variance is claimed by the defendant to be material, even though the words as they appear from the testimony should be held to be slanderous, but upon which we

will express no opinion. The words alleged by the declaration, to have been spoken of the plaintiff by the defendant were:

"That she, the defendant, did not find in the house everything that was inventoried, and that Mrs. Pizatti, meaning the plaintiff, had taken property that did not belong to her out of the house, meaning thereby that plaintiff, Mrs. Frances Pizatti, had stolen said property."

It appears from the evidence that Mrs. Pizatti was living in, and seems to have claimed the ownership of, a house in Biloxi; that, before the controversy here in question arose, she went to New Orleans, leaving the house vacant, and remained there several weeks; that in her absence the defendant entered, and on Mrs. Pizatti's return was occupying the house. On the occasion in question Mrs. Pizatti, accompanied by her niece, Miss May Pizatti, and a deputy sheriff, entered the house without obtaining leave so to do—the deputy sheriff stating that he went along with them at their request, "that they had some personal property there that they wanted to get, and they did not care to go there by themselves." What then occurred can best be told in the language of the deputy sheriff, who stated: "When we went in, Mrs. Woodville asked her—this lady (Mrs. Pizatti)—if she had a warrant, and this lady (Mrs. Pizatti) says, 'What, a warrant to come in my own house;' and they began to talk between themselves about the things in the house, and this lady— Q. Who? A. Mrs. Pizatti. So they had taken the dishes and chinaware out of that room and storing it in the other, and Mrs. Woodville told her there had been an inventory taken of everything in the house, and all of the stuff put on the list was not there; that she had taken part away. Q. Who had taken part away? A. Mrs. Pizatti. Q. What took place? A. Stopped at that time

moving dishes and silverware and so forth, and went upstairs to get some things, and got up there and found a trunk and wardrobe and things had been opened, and clothing, hats, and things scattered on the floor; and so they never moved anything up there, and at that time we left.''

Three witnesses were introduced on behalf of the plaintiff, herself, Miss May Pizatti, and the deputy sheriff, who accompanied them to the house. According to the plaintiff's testimony the words spoken by the defendant were:

''What have in the house, took it out without inventory; . . . what they had in the house, didn't have it inventoried. . . . You must have took it out.''

According to Miss May Pizatti they were:

''I don't find in this house all that was inventoried. She said Mrs. Pizatti had taken things out of the house; . . . that the house was practically empty.''

According to the deputy sheriff they were:

''There has been an inventory taken of everything in the house, and that all of the stuff on the list was not there, but she had taken part away.''

The defendant disclaimed having used the words charged to have been spoken by her, or any words similar thereto, stating that all she said was, ''I was responsible for every thing that was inventoried,'' and, when asked by what authority she entered and was occupying the house, replied that she was told by her lawyer that she had the right so to do.

It does not appear from the evidence by whom or for what purpose the inventory referred to was made, but it does appear that the plaintiff was the widow of Salvadore Pizatti, deceased, and we learn from the briefs of counsel, but not from the record, that the controversy grew out of a dispute over the succession to his estate.

The action is not predicated upon our actionable words statute, and no actual damage to the plaintiff

was attempted to be shown; her claim being that the words alleged to have been spoken of her by the defendant are actionable *per se* under the common law, for the reason that they charge her with the commission of a crime. All words charging a person with the commission of a crime are not actionable *per se,* but only such as charge him with the commission of an act which, if true, would subject him to punishment—"for a crime involving moral turpitude, or would make him liable to a punishment infamous in character, or to one which, if not necessarily infamous, would bring disgrace upon him." 17 R. C. L. 265.

The words complained of, as they appear from the evidence, certainly do not charge the commission of a crime of any of these three characters, and since the plaintiff claimed at least a part of the furniture in the house, which claim does not appear from the evidence to have been disputed by the defendant, they do not necessarily imply that the taking by the plaintiff of a part of the "stuff" out of the house was with any criminal intent whatever.

The peremptory instruction requested by the defendant should have been given.

Reversed, and judgment here for the defendant.