MOREHEAD *v.* UNITED STATES FIDELITY & GUARANTY CO.

(Division B.   Nov. 27, 1939.)

[192 So. 300.   No. 33896.]

Alexander & Satterfield, of Jackson, for appellant.

**J. A. Covington, Jr.**, of Meridian, and **Chaney & Culkin,** of Vicksburg, for appellee.

Argued orally by **J. C. Satterfield**, for appellant, and by **J. A. Covington, Jr.**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

B. H. Morehead, a justice of the peace of Claiborne county, Mississippi, brought suit against the United

States Fidelity & Guaranty Company for alleged libel. The United States Fidelity & Guaranty Company, surety on the bond of Morehead, justice of the peace, filed a petition with the board of supervisors, seeking to be released. as such surety, stating therein that "it conceives itself to be in danger of suffering by being such surety and desires to be relieved of the obligation;" and further, that it was surety on the official bond of B. H. Morehead as justice of the peace. It is also averred in the declaration that the defendant had its agent, the defendant Otho R. Smith, to prepare and present to the board of supervisors an order upon said petition, which order reads in part as follows: "Upon consideration of the petition of United States Fidelity & Guaranty Company, surety upon the official bond of B. H. Morehead, as justice of the peace of the county, stating that it conceives itself to be in danger of suffering by being such surety and that it desires to be relieved of the obligation." It is stated that the petition and order were prepared and presented by the said agent on behalf of the defendant company, acting within the scope of his employment, and in the performance of his duties.

It was further alleged that at the time the petition and order were presented to the board and defendant knew that under the provisions of the law they would have to be published in the newspaper having general circulation in the county; and they were so published in the Port Gibson Reveille, a newspaper having general circulation in Claiborne county, thus informing the public at large of the statements contained in the petition and order, both in Claiborne county, and elsewhere in the state.

The declaration alleges that B. H. Morehead had been in the public service for nearly forty years; was a member of the board of supervisors of Claiborne county in 1903; served as sheriff and tax collector of the county from 1908 to 1912; as chancery clerk from 1912 to 1924; again as sheriff and tax collector from 1924 to 1928; and yet again from 1932 to 1936. It is averred that the state-

ment that the company "conceives itself to be in danger of suffering by being such surety and desires to be relieved of the obligation," was libelous per se; that the defendants well knew such statement to be false, and wrote and published it in wanton disregard of the rights of plaintiff, and to his great detriment; such wanton and reckless publication thereof, with knowledge of its falsity, constituting malice in law. That the statement was calculated to make the impression that the plaintiff was unworthy as an official, and had been unreliable and unfaithful to his duties as such official, to the extent of committing acts of dishonesty, etc., and that the United States Fidelity & Guaranty Company, for that reason, wished to withdraw as surety. That the common acceptance of the terms used in the petition and order implied that the plaintiff was unfit for the office he held, and for the proper discharge of his duties, whereby the company was endangered in its capacity as surety. That the publication of this libelous statement caused the plaintiff humiliation and disgrace among his friends in the community in which he lived, and injured his reputation as a citizen and as an officer.

The defendant demurred to the declaration, and the demurrer was sustained; and plaintiff having declined to plead further, final judgment was entered, dismissing the suit.

The language used by the surety company in petitioning to be relieved from further liability on the bond was in accordance with the provisions of section 2895, Code of 1930, which reads as follows:

"In case a surety on any bond of any county or county district officer shall conceive himself to be in danger of suffering by being such surety, and shall desire to be relieved therefrom, he may petition the board of supervisors for relief in the premises, and the board of supervisors shall thereupon order that the officer give a new bond with sufficient sureties, in a penalty not less than the first bond, and conditioned according to law, and that notice

of such order shall forthwith be given to such officer, and that said new bond be furnished within such reasonable time as the board may direct, not exceeding thirty days from the date of said order; and on the giving of such bond, and the approval thereof by the board, the petitioner shall be discharged from further liability on the bond; as to the performances of all official duties after the giving of such new bond; and if such officer shall fail or refuse to comply with the order to give a new bond, his office shall thereby become vacant and the vacancy shall be filled as in other cases of vacancies in county offices.''

The defendant surety company had the right, under this statute, which was in force when the bond was executed, to be relieved of the bond, and liability thereunder, by petitioning, in the language of the statute, ''In case a surety on any bond of any county or county district officer shall conceive himself to be in danger of suffering by being such surety, and shall desire to be relieved therefrom, he may petition the board of supervisors for relief in the premises.''

As a general rule, no liability exists for the exercise of legal right. The defendant surety company had a legal right to be relieved of its liability on the bond by petitioning the board in accordance with the language of the statute, as it did. The public policy of the state favors surety bonds, and requires the various public officers to give bond with a suitable surety, and corporate sureties or surety companies authorized to do business in the state are required in numerous instances. It would be difficult, if not impossible, to have such bonds executed if there were no provisions for relief from such bonds after they were executed during the term of the officer. It would also be difficult to have any surety company or other person execute a surety bond it a petition for relief therefrom, following the language of the statute, would result in having to run the gauntlet of a libel suit. The statute does not require the petitioner to state the facts

upon which he conceives that he would be injured, or the manner or extent of such injury. When the petition is filed, and notice given, it is the duty of the board to enter its order requiring a new bond, in accordance with the statute, and to relieve the surety from further liability upon such bond. But the board has jurisdiction and power to fix the time within which the new bond shall be given, its discretion in such matter being of a judicial nature.

Furthermore, we are of the opinion that the language used is not libelous per se—that it did not impute the meaning given in the declaration. There are many reasons which might induce a surety to desire to be relieved from a bond, not contained in the allegations of the declaration as to the effect of the language used in the petition and in the statute. The case here is very similar in its language, and the purport thereof, to the case of the Heralds of Liberty v. Rankin, 130 Miss. 698, 94 So. 849, 850. In that case Laura B. Rankin had been secretary of the Heralds of Liberty, and as such had been charged with the collection of certain premiums from customers or policy-holders of the company. Certain suits had been filed against the Heralds of Liberty, and funds which would accrue to it as premiums impounded. The Heralds of Liberty thereupon gave notice to its policy or certificate holders as follows: "You are hereby notified to pay no further premiums in the Heralds of Liberty to our former collector, Laura B. Rankin, Gulfport, Miss., as it becomes necessary at this time for the future protection of our membership in Mississippi that a change in collectors be made, and we have this day canceled the appointment of Sister Rankin."

In the course of its opinion the Court said: "From this language there is nothing which tends to injure the reputation of the appellee, or expose her to public hatred, contempt, or ridicule, or degrade her in society, lessen her in public esteem, or lower her in the confidence of the community. Neither is there in this letter any language

which imputes that she is unworthy of credit, and which naturally tends to injure her good standing and good name in the community or lower her in the confidence and respect of her neighbors. Before being actionable per se, this letter must have had the above effect." Citing Wrought Iron Range Co. v. Boltz, 123 Miss. 550, 86 So. 354; Woodville v. Pizatti, 119 Miss. 85, 80 So. 491; Holliday v. Md. Casualty Co., 115 Miss. 56, 75 So. 764; Moore Stave Co. v. Wells, 111 Miss. 796, 72 So. 228.

The language used did not indicate, nor would it be understood to indicate to the public, in our opinion, that there was any official dishonesty or incapacity on the part of the justice of the peace in his capacity as such officer; nor would the language import that he was unworthy of credit, dishonest or insolvent. Whether language used is libelous or not per se is determinable by the court. Interstate Co. v. Garnett, 154 Miss. 325, 122 So. 373, 756, 63 A. L. R. 1402. If language has two or more different meanings, one of which per se would be libelous per se, and the other not, the plaintiff would have to allege that the language was used by the libelant in the libelous sense, and that it was so understood by the person or persons to whom addressed.

In the case before us we do not think the language before us is susceptible of being construed to be libelous; and there is no allegation that it was used in a trade or business sense, where a special and different meaning could be placed upon it, or that it was so used and so understood in a sense which would make it libelous. Taylor v. Standard Oil Co. (Miss.), 186 So. 294, 295; 36 C. J. 1158 and note 75, also page 1164 and note 25.

In Taylor v. Standard Oil Co., supra, it is said: "The rule, in cases of this class, is that both the judge and the jury in performing their respective functions take into account all the circumstances surrounding the communication of the matter complained of as defamatory. A. L. I. Rest. Torts, sec. 614, subpar. c., p. 305. Accordingly, it was said in Illinois Cent. R. Co. v. Wales, 177 Miss.

875, 885, 171 So. 536, 538, 'that no attempt will be made to lay down any definite rule as to the construction of language charged to be slanderous which will govern all cases, but that the particular language used, and the particular facts and circumstances of each case, must control.' There are several different interpretations or constructions which may be placed upon the charge of a shortage against those who not only conduct, or supervise the conduct of, the particular business of an employer, when that business is large, but who also keep the daily accounts and make their own frequent reports thereof to their employer, as was the case here. . . . The rule is, then, that when a statement is reasonably capable of several meanings, some of which would be defamatory and some would not, the burden is on the plaintiff to prove that it was reasonably and properly understood by the person or persons to whom it was published as having the defamatory meaning. A. L. I. Rest. Torts, sec. 613, p. 300, and sec. 614. And there is no defamation if the recipient does not so understand it; and in determining the reasonableness of the recipient's understanding that meaning is to be given to the words which is ordinarily attached thereto by persons familiar with the language used." Citing authorities.

We do not think, taking the declaration and all its averments as to the language used in the petition to the board of supervisors, and in the order thereon of the board, that such petition and order constitute a libel upon the plaintiff. It certainly could not be said that the language there used comes within the averments on that subject in the case above referred to, and in the many other cases which have been cited and considered in this cause.

Furthermore, in executing the bond for the plaintiff, the statute above quoted becomes a part of the bond, and the surety, in addition to the statutory right, had a contractual right to withdraw from the bond whenever it petitioned, as provided in the statute, which becomes

a part of the contract. It was a matter of the exercise of a legal right, and the language used conformed strictly to the statutory provisions. Consequently, there was no liability on the surety company for the petition, nor for the publication of the said order. The statute does not require the order to be published, and we are not informed as to why publication was to be made. The justice of the peace was a resident of the county, and could be notified in other ways of the application and of the requirement to give bond; but at all events, there is no liability growing out of the matter, and the judgment of the court below is affirmed.

Affirmed.