MANASCO *v.* WALLEY.

Feb. 23, 1953

No. 38648 21 Adv. S. 35 63 So. 2d 91

*Frank Clark* and *Collins & Collins,* for appellant.

*David Gross* and *Melvin, Melvin & Melvin,* for appellee.

618

*Frank Clark* and *Collins & Collins,* in reply.

KYLE, J.

Ben Walley, as plaintiff, recovered a judgment against W. E. Manasco, doing business as "The Greene County Herald," defendant, in the circuit court of Greene County, and from that judgment the defendant prosecutes this appeal.

The plaintiff's action was an action for damages for defamation based upon the provisions of Section 3175, Code of 1942. The plaintiff's cause of action arose out of the publication of an editorial in "The Greene County Herald" on March 23, 1951, criticizing the action of the plaintiff as a member of the State House of Representatives in voting for a bill, which was passed at the 1949 Special Session of the Legislature, providing for a redesignation of the highways on the state highway system, and providing for the removal from the list of state

highways of approximately 5,000 miles of roads which had been theretofore designated as state highways, including the Leakesville-State Line highway in Greene County.

The plaintiff alleged in his declaration that at the time of the publication of the above mentioned editorial the plaintiff was a candidate for reelection to the office of State Representative in the Democratic primary election to be held during the month of August; that the editorial reflected upon the plaintiff's honesty and integrity and moral character, and that the defendant thereafter refused, when requested to do so, to publish a statement by the plaintiff giving the plaintiff's reply to the statements contained in the editorial complained of; and that as a result of the printing of the editorial and the refusal of the defendant to publish the plaintiff's reply the plaintiff had been damaged in the sum of $25,000.

The newspaper article complained of was set forth in full in the plaintiff's declaration and was as follows:

## "LISTENING AROUND WITH YE EDITOR

### "Short Item of Interest to Citizens and Tax Payers of Greene

"We may be 'old fashioned' in our way of thinking, but believe that the only way you can build highways is to get them on the 'priority list' while the state legislature is in session, and then they can be built when money is available for them. Highway 63 and Leakesville-State Line Highways were on 'priority' and during the 1950 session of the state legislature Greene County Representative Ben H. Walley had them taken off this list and they cannot be worked or paved now.

"If Representative Walley wanted to serve Greene County's best interests, why was these highways removed from 'priority'? When state highway commission had issued a resolution to board of supervisors to take Leakesville-State Line highway over for mainten-

ance and they had to rescind this resolution because these highways had been removed from priority. Leakesville-State Line highway was slated to be finished this year.''

The defendant in his answer admitted that he had published the editorial, but denied that the editorial reflected in any way upon the honesty, integrity or moral character of the plaintiff; and the defendant denied that he was under any obligation to publish the plaintiff's reply; and the defendant denied that the plaintiff had been damaged as a result of the publication of the newspaper article.

On the trial in the circuit court the defendant was called as an adverse witness to testify for the plaintiff. The defendant testified that he was the owner and editor of ''The Greene County Herald,'' and that he had written and published the editorial complained of. The defendant admitted that soon after the publication of the editorial the plaintiff had prepared and requested him to publish a reply, and that he had refused to publish the reply, giving as his reason therefor that he did not have sufficient space for the publication of same in his newspaper.

The plaintiff, testifying in his own behalf, stated that he was thirty-seven years of age and had been engaged in the practice of law at Leakesville since 1946; that he had served four years as a member of the State House of Representatives from Greene County; and that at the time of the publication of the above mentioned newspaper article he was a candidate for reelection and had one opponent. The plaintiff was questioned in particular by his own attorney about the statement that ''Highway 63 and Leakesville-State Line highways were on 'priority,' and during the 1950 session of the state legislature Representative Ben H. Walley had them taken off this list.'' And in answer to the question, Walley stated that there was no such thing as a 'priority list,' and that he had not taken the above mentioned roads off

the 'priority' list. He was then asked about the next succeeding statement, ''If Representative Walley wanted to serve Greene County's best interest, why were these highways removed from 'priority'?'' And in answer to that question, he stated that he considered that statement a reflection upon his honesty, integrity and moral character and his fitness to serve the people of his county as a representative in the state legislature.

The plaintiff then stated that State Highway No. 63 had been placed on the state highway system, as a road in the second group of state highways, by Chapter 190 of the Laws of 1936, and had remained on the secondary system of state highways until the enactment of Chapter 6 of the Laws of Mississippi, Extraordinary Session of 1949; that under the provisions of that act all differences in the classification of state highways were eliminated; and that State Highway No. 63 still retained its status as a state highway under the new act. He stated that the Leakesville-State Line road had been placed on the state highway system, in the secondary group of state highways, by Chapter 368 of the Laws of 1946, but that the status of that road had been changed under the provisions of the new act; that the Leakesville-State Line road had been taken off the state highway system under the provisions of the new act, along with approximately 5,000 miles of other roads, as a part of the plan which the Legislature adopted to reduce the total mileage on the state highway system from 13,500 miles to 8,600 miles and to create a system of state aid roads under the jurisdiction of the boards of supervisors to supplement the system of state highways; and that the Leakesville-State Line road had thereby been made eligible for improvement as a part of the new state aid road program. The plaintiff stated that he had served as a member of the Legislative Recess Study Committee which had devised the plan for the construction of the system of state aid roads provided for under the provisions of the new act. He stated that Greene County

would be entitled to have 208 miles of state aid roads constructed as its share of the roads on the state aid road system, and that in his opinion the Leakesville-State Line road would be given top priority on the state aid road system. The plaintiff's testimony concerning the status of the two roads mentioned above under the new act followed closely the contents of the statement which he had prepared for publication as a reply to the newspaper article complained of and which the defendant had refused to publish.

The plaintiff testified further that, after the defendant had refused to publish his reply, he was forced to incur heavy expenses in attempting to counteract the harmful effects which had been produced by the publication of the false and misleading statements contained in the editorial; that he had handbills printed and distributed over the county, setting forth the facts concerning the changes made in the status of the two highways under the provisions of the new act; and that he spent several weeks traveling over the county for the purpose of contacting the people and explaining to them the facts concerning the status of the two highways. He stated that his law business had suffered as a result of the aspersions cast upon his honesty and integrity by the publication of the editorial.

Several other witnesses testified for the plaintiff for the purpose of showing that the publication of the editorial during the political campaign had provoked unfavorable comments among the people concerning the plaintiff's responsibility for the two roads losing their priority status and the failure of the state highway department to take over the roads for improvement as state highways.

At the conclusion of the plaintiff's testimony the defendant's attorneys made a motion to exclude the evidence offered on behalf of the plaintiff and for a directed verdict. The court overruled the motion. The defendant offered no testimony on his own behalf. Each

of the respective parties asked for a peremptory instruction, which the court refused to grant; and the case was submitted to the jury upon the evidence presented by the plaintiff and the instructions granted by the court. The jury returned a verdict for the plaintiff, and judgment was entered thereon. The defendant filed a motion for a new trial, which was overruled; and the case is now before us on appeal from the judgment in favor of the plaintiff.

The first point argued by the appellant's attorneys as ground for reversal of the judgment of the lower court is that the newspaper article complained of did not reflect upon the plaintiff's honesty, integrity or moral character, and that the court erred in refusing to grant the appellant's request for a peremptory instruction. And, in view of the conclusion that we have reached on that point, it will not be necessary for us to consider the other points argued in the appellant's brief.

We think that the peremptory instruction requested by the appellant should have been granted. ▪▪ ▪ In our opinion, it cannot be said that the newspaper article complained of reflected upon the honesty, integrity or moral character of the plaintiff.

The editorial complained of in the plaintiff's declaration shows very clearly that the writer of the editorial had only an imperfect understanding of the program of highway legislation, which had been enacted during the 1949 Special Session and the 1950 Regular Session of the Legislature, or the changes made in the status of the two highways mentioned in the editorial. State Highway No. 63, as the plaintiff stated in his testimony during the trial, retained its status as a road on the state highway system under the 1949 act, and was still a part of the state highway system at the time of the trial. The Leakesville-State Line road, which had been placed on the state highway system in 1946, as a road in the secondary group of state highways, like many other roads in the 82 counties of the State which had been

added to the state highway system during the last fifteen years, was taken off the list of state highways under the 1949 act. By this change in its status the road was made eligible for improvement and paving as a state aid road under the state aid road program provided for in the new act. These facts were set forth in the reply which Representative Walley prepared and requested the editor to publish a few days after the editorial was published; and they were facts which should have been published in the interest of fair play, to correct the misleading impression that had been created by the garbled statements contained in the editorial.

But the plaintiff's action in this case, as shown by the pleadings, is based upon the statute, Section 3175, Code of 1942, and the statute does not require that the publisher of a newspaper make amends for an unjust criticism of a candidate for public office by printing the candidate's reply, except in cases where the editorial or news story reflects upon the honesty or integrity or moral character of the candidate. It was clearly the purpose of the legislature to limit the provisions of the statute to cases in which the editorial comment or the news story is defamatory, and defamatory in a particular manner, that is to say, where the editorial or news story *reflects upon the honesty or integrity or moral character of the candidate.* The word "reflect," as that word is used here, means to cast aspersion or reproach. "Integrity," as defined in Webster's Unabridged Dictionary, means moral soundness, freedom from corrupting influence or practice. "Honesty" means fairness and straightforwardness of conduct, integrity, freedom from fraud. "Moral" means righteous or upright.

 "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." A.L.I. Restatement of the Law, Torts, Vol. 3, par. 559. In order to constitute

defamation, the alleged libelous matter must assail "the integrity and moral character of the injured party." Shaw Cleaners & Dyers v. Des Moines Dress Club, 215 Iowa 1130, 245 N. W. 231, 86 A. L. R. 839.

"Words, in order to be defamatory per se, must be susceptible of but one meaning, and that an opprobrious one." 53 C. J. S., p. 43, Libel and Slander, par. 8 (a). And, in determining whether a publication is libelous, it must be considered as a whole, and its meaning must be ascertained from the language used, as commonly understood. Sweeney v. Caller-Times Pub. Co., 41 F. Supp. 163.

In the case of Shields v. Booles, 238 Ky. 673, 38 S. W. 2d 677, the court said that defamatory words, to be libelous per se, must be of such a nature that the court can presume as a matter of law that they do tend to disgrace and degrade the person, or to hold him up to public hatred, contempt or ridicule, or to cause him to be shunned and avoided. And the Court in that case held that a newspaper article misrepresenting that a candidate for the office of State Senator, as a member of the Legislature, voted against repeal of the pari-mutuel law, was not libelous per se, and that where the words were not actionable per se, no damage could be implied.

The meaning of the editorial that we now have before us must be ascertained from the language used, as commonly understood; and it does not appear from the language used in the editorial that the writer intended to assail Representative Walley's integrity or moral character.

It is true that the appellant, through ignorance or negligence, as the appellee's attorneys charge in their brief, stated that Representative Walley had taken State Highway No. 63 off of "priority"; and that statement was untrue. But we do not think that it can be said that that statement reflected upon Walley's honesty, integrity or moral character. Whether true or false, it was in no

sense defamatory, and it could not be made the basis of a suit under Section 3175, Code of 1942. ▉▉▉ The penalty of the statute is not directed against the publishing of an article which contains misstatements of facts concerning a candidate for public office, unless such misstatement of facts reflects upon the honesty, integrity or moral character of the candidate.

Neither do we think that the question asked in the editorial, ''If Representative Walley wanted to serve Greene County's best interests, why were these highways removed from 'priority'?'' can be said to have been defamatory. A majority of the members of the House of Representatives and a majority of the members of the State Senate voted for the bill which removed approximately 5,000 miles of roads from the state highway system. All of those roads served the needs of the counties in which they were located. Whether it was best for the people living along the routes affected to have those roads taken off the state highway system, so as to make them eligible for immediate improvement and paving under the state aid road program, was a matter about which there might be reasonable differences of opinion. Whether the Legislature acted wisely or unwisely in the matter was a proper subject for newspaper comment and criticism, and one might reasonably expect that during a political campaign, when members of the Legislature were up for reelection the question would be asked, Why were those roads taken off of the state highway system? The obvious answer to that question, from the standpoint of the legislators who voted for the bill, was that the members of the Legislature who voted for the bill thought that they were acting for the best interest of the people of the State as a whole, when they voted to reduce the total mileage of roads on the state highway system from 13,500 miles to 8,600 miles, in order that the state highway commission, out of its share of the state gasoline tax, might be able to maintain properly and im-

prove and reconstruct according to modern highway standards, the main trunk line highways of the State, without being required to issue additional state highway bonds for that purpose.

 The provisions of Section 3175, Code of 1942, are penal in their nature, and the statute should be strictly construed. Statutes creating liabilities which did not exist at common law, "although supposed to be founded on considerations of public policy and general convenience, are not to be extended beyond the plain intent of the words of the statute." Houston v. Holmes, 202 Miss. 300, 32 So. 2d 138. The Court in interpreting a statute of this kind must look to the statute itself for the legislative intent, and the words of the statute must be given their usual and ordinary meaning. Section 3175, according to the language used, applies only in cases where the newspaper article complained of reflects upon the honesty, integrity or moral character of the candidate; and the Court cannot by judicial interpretation extend the liability imposed by the statute to cases involving other types of objectionable newspaper comment or criticism, which do not fall clearly within the language used in the statute.

 In an action of this kind, where the language complained of is clear and unambiguous, it is the duty of the court to determine whether it is actionable, either per se or per quod. 33 Am. Jur., p. 277, Libel and Slander, par. 294, and cases cited; A.L.I. Restatement of the Law, Torts, Vol. 3, par. 615; Note: Ann. Cas. 1917 B 432; Morhead v. U. S. Fidelity & Guar. Co., 187 Miss. 55, 192 So. 300.

We think that the editorial complained of in the case that we have here did not come within the provisions of the statute, and that the peremptory instruction requested by the appellant should have been granted.

For the reasons stated above the judgment of the lower court is reversed and judgment rendered here in favor of the appellant.

Reversed and judgment rendered.

*Roberds, P. J.,* and *Holmes, Ethridge* and *Lotterhos, JJ.,* concur.