487 So.2d 843 (1986)
George L. WHITTEN, W.H. Tatum, Jr., & Wilburn Gregory
v.
COMMERCIAL DISPATCH PUBLISHING COMPANY, INC.
No. 55543.
Supreme Court of Mississippi.
April 30, 1986.
Orma R. Smith, Jr., Jackie Tatum, Smith, Ross & Trapp, Corinth, Lester F. Sumners, Darden, Sumners, Carter, Trout & McMillin, New Albany, for appellants.
John W. Crowell, Gholson, Hicks & Nichols, William J. Threadgill, Threadgill, Smith, Sanders & Jolly, Columbus, for appellee.
Before PATTERSON, C.J., and DAN M. LEE and ROBERTSON, JJ.
PATTERSON, Chief Justice, for the Court:
This is a libel action against Commercial Dispatch Publishing Company for the publication of a newspaper article which contained an erroneous headline. The Circuit Court of Lowndes County dismissed the complaint for failure to state a cause of action upon which relief could be granted.
In November, 1981, George Whitten, W.H. Tatum, Jr., and Wilburn Gregory pled guilty to federal misdemeanor charges of transferring cattle from Alabama to Mississippi without having the animals tested for brucellosis bacterial disease. The incident was reported in the November 13, 1981 issue of The Commercial Dispatch newspaper and read as follows:

*844 THREE PLEAD GUILTY IN CATTLE THEFTS.
Oxford  Three Mississippi men have pleaded guilty to federal charges of illegally transferring cattle from Alabama to Alcorn and Tippah Counties.
Officers said Wilburn Gregory, George L. Whitten and W.L. Tatum, all of Alcorn County, were charged with moving the 112 head of cattle from Red Bay, Alabama, to Mississippi without having the animals tested for brucellosis, bacterial disease.
The three face sentencing November 30, for the misdemeanor crime.
The newspaper article as published had an erroneous headline followed by a correct text. It is undisputed that none of the men were involved in, nor did they plead guilty to, a cattle theft.
The complaints in this cause alleged the publication was libelous per se and made maliciously or negligently with a reckless disregard for the truth. Commercial Dispatch denied the publication was done maliciously or negligently, and pled as an affirmative defense that it was entitled to a qualified privilege in connection with the publication because it was a report of litigation or judicial proceedings.
The lower court dismissed the complaints holding that the headline and the body of the article must be read together, and as such the article was a fair statement of the court proceedings and therefore protected by the qualified privilege granted to newspapers. We are of the opinion the dismissal was error.
We recognize the two competing interests at stake in cases involving allegations of libelous newspaper publications. We confront the interests of each individual in protecting his reputation, and the constitutionally guaranteed First Amendment rights of the publisher. The Supreme Court has accommodated both interests by defining the appropriate standards of liability for a defamatory falsehood according to the plaintiff's status as either a private individual or public figure. In Gertz v. Welch, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the court held the First and Fourteenth Amendments require at a minimum a showing of negligence before a private figure may recover an award of actual damages for libel; a public figure must show actual malice, defined as ill will or reckless disregard of the falsity of the statements made.
We need not address the question of whether the newspaper article published by Commercial Dispatch Publishing Co. was defamatory as to the plaintiffs. Our inquiry is limited to whether the lower court properly dismissed this cause on the pleadings, and to this end we focus on the plaintiffs' status as public figures or private individuals.
In Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Supreme Court identified two ways in which a person may become a public figure for purposes of the First Amendment:
For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved.
418 U.S. at 345, 94 S.Ct at 2997, 41 L.Ed.2d at 789.
The public policy of this State was announced in Edmonds v. Delta Democrat Publishing Co., 230 Miss. 583, 93 So.2d 171 (1957), wherein this Court noted that a private citizen may become a public figure when he injects himself into a matter of legitimate public interest. In 1984 we applied this liberal concept of the quasi-public figure to three physician plaintiffs who were employed at a public hospital. Ferguson v. Watkins, 448 So.2d 271 (Miss. 1984). We stated "any person who becomes involved, voluntarily or involuntarily, in any matter of legitimate public interest ... becomes *845 in that context a vortex public figure who is subject to fair comment." 448 So.2d at 278. Central to our determination that the doctors were public figures was the fact that they were public employees employed by a public hospital. As such, they voluntarily entered the public domain.
We are not presently presented with a situation in which private individuals have injected themselves into a matter of public interest. Rather, these individuals were drawn into a public forum in an attempt to defend themselves against actions brought by others. We find no justification for increasing the standard of proof from a showing of negligence to that of actual malice in this situation.
The United States Supreme Court expressed this rule when called upon to decide whether an individual who was indicted for espionage was a "public figure" for First Amendment purposes. Wolston v. Readers Digest Assn., Inc., 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979). The court reiterated its position taken in Time, Inc. v. Firestone, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976):
While participants in some litigation may be legitimate "public figures", either generally or for the limited purpose of that litigation, the majority will more likely resemble respondent, drawn into a public forum largely against their will in order to attempt to obtain the only redress available to them or to defend themselves against actions brought by the state or by others. There appears little reason why these individuals should substantially forfeit that degree of protection which the law of defamation would otherwise afford them simply by virtue of their being drawn into a courtroom. The public interest and accurate reports of judicial proceedings is substantially protected by Cox Broadcasting Co. [v. Cohn, 420 U.S. 469, [95 S.Ct. 1029, 43 L.Ed.2d 328] (1975)]. As to an accurate and defamatory report of facts, matters deserving no first amendment protection ..., we think Gertz provides an adequate safeguard for the constitutionally protected interest of the press and affords it a tolerable margin for error by requiring some type of fault.
We emphasize that our decision in the case before us is not an across the board classification to be applied to all persons involved in criminal activity. Our determination is derived from the mandates of Gertz wherein the Supreme Court emphasized that a court must focus on the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation." 418 U.S. at 352, 94 S.Ct. at 2997, 41 L.Ed.2d at 789. In the instant case, Whitten, Tatum, and Gregory, did no more than plead guilty to the misdemeanor charge of transferring cattle from one state to another without having them tested for brucellosis. Although their participation in the "public controversy" may have been newsworthy, in our opinion it was not enough to transform them into public figures for first amendment purposes.
Thus, we are faced with the liability of a newspaper for publishing erroneous information about a private person.
In this state a communication is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Gulf Publishing Co., Inc. v. Lee, 434 So.2d 687, 694 (Miss. 1983); Manasco v. Walley, 216 Miss. 614, 63 So.2d 91, 95 (1953). By this standard, it is possible that an ordinary reader would entertain doubts as to the nature and extent of the plaintiffs' criminal involvement because of the erroneous headline.
Moreover, "in determining whether a publication is libelous, it must be considered as a whole, and its meaning must be ascertained from the language used, as commonly understood...." Manasco v. Walley, 216 Miss. 614, 63 So.2d at 95 (Citations omitted.) We reject the defendant's argument that the headline and article must be considered separately because we think no ordinary reader would logically separate the headline from the text.
*846 Finally, we reject the defendant's argument that the newspaper is protected by the qualified privilege to publish matters of public concern. While a newspaper publishing company is granted some leeway in its reporting, they may not misstate the facts or otherwise misconstrue the truth. See, for example: Edmunds v. Delta Democrat Publishing Co., 230 Miss. 583, 93 So.2d 171 (1957); Krebs v. McNeal, 220 Miss. 560, 76 So.2d 693 (1955); Smith v. Byrd, 225 Miss. 331, 83 So.2d 172 (1955).
The complaint alleges that Commercial Dispatch Publishing Co. negligently published a false headline. The Gertz requirement of negligence on the publishers part, and our own definitions of defamation lead us to the conclusion that the complaint states a claim upon which relief may be granted, adequate to survive a motion under Rule 12, Mississippi Rules of Civil Procedure. See Luckett v. Miss. Wood, Inc., 481 So.2d 288 (Miss. 1985); Stanton & Associates, Inc. v. Bryant Construction Co., Inc., 464 So.2d 499 (Miss. 1985).
The judgment below in the case is remanded for such further proceedings as may be appropriate in this action as though defendant's motion to dismiss had been denied.
REVERSED AND REMANDED.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
PRATHER, J., not participating.