573 So.2d 695 (1990)
Ken LAWRENCE
v.
Jessie L. EVANS.
No. 89-CA-1158.
Supreme Court of Mississippi.
December 12, 1990.
*696 James W. Craig, Jackson, for appellant.
Edward Blackmon, Jr., Blackmon Blackmon & Evans, Canton, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and BLASS, JJ.
ROBERTSON, Justice, for the Court.

I.
This libel action appears in a posture opposite of that we normally see. The reporter is doing the suing, claiming he has been libeled. The defendant is a lawyer, handling the prosecution of a separate libel action against the reporter/plaintiff, and who, while pursuing the all-too-familiar but still most lamentable practice of trying his lawsuit in the press, disparaged the reporter, and the latter has taken great offense.
In the end, we hold that the said-to-be offending comments were simply not defamatory. The Circuit Court dismissed the complaint on these grounds. We affirm.

II.
Ken Lawrence is an adult resident citizen of Jackson, Mississippi, who is a freelance reporter. At the time in question, Lawrence was doing some work with the Jackson Advocate, a newspaper published weekly in Jackson, Mississippi. Lawrence was the Plaintiff below and is the Appellant here.
Jessie L. Evans is a lawyer maintaining his office in Jackson, Mississippi. Evans represented one Emily Carter and on her behalf filed a libel action against Lawrence, Charles Tisdale, and the corporate publisher of the Jackson Advocate, claiming that the three had libeled Carter. Evans was the Defendant below and is the Appellee here.
It all goes back to 1986 when Emily Carter, on behalf of the New Alliance Party, was running for Congress from Mississippi's Fourth Congressional District. On page one of its April 10-16, 1986, issue, the Jackson Advocate published two articles, under the byline of Charles Tisdale, discussing Carter and her candidacy. Carter was of the view that these articles defamed her. Carter engaged the services of our present Defendant/Appellee, Jessie L. Evans, who prepared a complaint on her behalf charging the Jackson Advocate, Tisdale and Lawrence with libel. On May 27, 1986, Evans filed that complaint in the Circuit Court of the First Judicial District of *697 Hinds County, Mississippi. Significantly, the complaint charged that Lawrence's only participation was that he had collaborated with Tisdale in the writing and publication of the articles at issue. Lawrence's byline appears on neither article, nor is his name directly associated with either of them.
In September of 1986, Carter's libel action against the Jackson Advocate, Tisdale and Lawrence was in the discovery phase. Carter, through Evans as her lawyer, took the deposition of today's Plaintiff, Ken Lawrence. Shortly after this deposition, Evans made a statement to a reporter, Jacqueline Salit, who wrote an article that was published on September 26, 1986, in the National Alliance, a newspaper distributed in the State of Mississippi and in Hinds County. The general subject of the article was Carter's pending libel. Lawrence finds particularly offensive the following passage in the article:
"Whatever defense they are using," said Carter's attorney Jessie Evans, who is based in Jackson, "a defense they are not using is that the statements they made were true."
Soon thereafter Lawrence served upon Evans written notice demanding a retraction and apology. Some months later, the Circuit Court finally dismissed Emily Carter's action, and on September 12, 1987, Lawrence renewed his demand upon Evans for a retraction and apology, only to be met with silence.
Lawrence, in due course, filed a complaint in the Circuit Court of Hinds County naming Evans as Defendant and charging that Evans did, in fact, make the statements just quoted under circumstances where he was aware they would be published in a newspaper circulating in the State of Mississippi and in the Hinds County area. Lawrence attached the entire article to his complaint but highlighted the phrase listed above. In his complaint he alleges that the statement "tends to and does injure ... [his] reputation for the truthfulness of his articles, and thus damages... [his] professional reputation."
On August 16, 1988, Evans moved for summary judgment, attaching affidavits and various discovery matters. Over a year later, on September 14, 1989, the Circuit Court entered its order granting Evans' motion and finally dismissing Lawrence's complaint. The order recited no grounds therefor save only that, "There is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law." Lawrence has now appealed to this Court.

III.
As will presently appear, we find that Lawrence's complaint is deficient on its face. Accordingly, we consider the judgment below as though the Court had dismissed the complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Miss.R.Civ.P.; Walton v. Bourgeois, 512 So.2d 698, 699-700 (Miss. 1987); Millican v. Turner, 503 So.2d 289, 292 (Miss. 1987). In our present procedural posture we take as true the allegations of the complaint. City of Mound Bayou v. Johnson, 562 So.2d 1212, 1213 (Miss. 1990); Tucker v. Hinds County, 558 So.2d 869, 872 (Miss. 1990).
Subject to our normal standards, the question whether said-to-be-offending words are defamatory may be decided by the Court without submission to the trier of fact. See Fulton v. Mississippi Publishers Corp., 498 So.2d 1215, 1217 (Miss. 1986).
There is a difference between making a false statement about another person and making a defamatory statement. The latter requires more than mere error. Our law has long limited libel to
Any written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community... .
See, e.g., The Meridian Star, Inc. v. Williams, 549 So.2d 1332, 1334 (Miss. 1989); Gulf Publishing Co., Inc. v. Lee, 434 So.2d 687, 694 (Miss. 1983); Manasco v. Walley, 216 Miss. 614, 63 So.2d 91, 95 (1953).
*698 The said-to-be-offending words must be set in the context of the entire utterance. Their complexion draws color from the whole. Whitten v. Commercial Dispatch Publishing Co., Inc., 487 So.2d 843, 845 (Miss. 1986); Manasco v. Walley, 216 Miss. 614, 63 So.2d at 95. The defamation must be unmistakable from the words and not be the product of innuendo, speculation or conjecture. The Meridian Star, Inc. v. Williams, 549 So.2d at 1334; Ferguson v. Watkins, 448 So.2d 271, 275 (Miss. 1984). To be libelous the words
... must be susceptible of only one meaning and that meaning must be an opprobious one.
The Meridian Star, Inc. v. Williams, 549 So.2d at 1334. If the reader must struggle to see how and whether they defame, by definition the words are not defamatory in law. Words which may be found defamatory only with the aid of "a most vivid imagination" are not actionable. Fulton v. Mississippi Publishers Corp., 498 So.2d 1215, 1217 (Miss. 1986).
The common law thought it defamatory and thus actionable to say that the plaintiff is a liar. See, e.g., Prewitt v. Wilson, 128 Iowa 198, 103 N.W. 365 (1905); Colvard v. Black, 110 Ga. 642, 36 S.E. 80 (1900). Some courts have held a claim that one has lied on a lone occasion is not libel per se, Wade v. Sterling Gazette Co., 56 Ill. App.2d 101, 205 N.E.2d 44 (1965). The better view seems that a single charge of lying or dishonesty, if it otherwise meets the test of defamation, may be actionable. Caswell v. Manhattan Fire and Marine Insurance Co., 399 F.2d 417, 420-21 (5th Cir.1968); Walsh v. Miami Herald Publishing Co., 80 So.2d 669, 671 (1955).
No mechanical process is available whereby we may apply these considerations and come up with a single incontrovertible determination whether the words at issue are libelous. Still, sensitive application counsels affirmance. To be sure, we may not put Evans' words in the context of the entire article as we would if reporter Jacqueline Salit and the newspaper, The National Alliance, were the defendants. Still, the context in which Evans made the utterance was that of Emily Carter's libel action against Tisdale, Lawrence and the Jackson Advocate, and this is a matter of importance.
Lawrence would have us interpret Evans' statement as charging that he has conceded that the articles Carter was claiming defamatory were not true, that the common understanding of Evans' comments as quoted in the National Alliance was that Lawrence had admitted falsity. This is stretching the point by a mile or two.
The said-to-be offending statement begins with "whatever defense they are using." Assuming that Lawrence is included in "they," the word "defense" quite clearly refers to the legal strategy Lawrence and his attorney may be employing in defense of the lawsuit. The statement goes on to say "a defense they are not using is that the statements they made were true." Again the word "defense" is important. It is one matter to say that Lawrence has admitted that the statements he made were lies, but this is not what Evans said of Lawrence, again assuming "they" includes Lawrence. One defends a lawsuit on grounds one considers most likely to succeed. From the papers before us, it is apparent Lawrence was asserting at least two defenses which, as a practical matter, would concede error in the articles. First, Lawrence was taking the position that he did not write the articles and that he is not liable even if they should be found defamatory. It will be recalled that Carter's original complaint attached the article published in the Jackson Advocate which bore Tisdale's byline. Lawrence's name was nowhere to be found. The only allegation against Lawrence was that he had collaborated and assisted in developing the information that went into the article.
There is a second defense, the so-called New York Times v. Sullivan defense, which Lawrence was asserting. Because Emily Carter was a candidate for Congress, Lawrence and the other defendants had asserted that they
are privileged by means of the First and Fourteenth Amendments to the United *699 States Constitution and the "fair comment" doctrine of the laws of the State of Mississippi, which privilege protects the publication of matters concerning public issues and public figures, including candidates and candidacies for public office.
This defense derives from such familiar cases as New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and in this state Ferguson v. Watkins, 448 So.2d 271, 277-79 (Miss. 1984); and Edmonds v. Delta Democrat Publishing Co., 230 Miss. 583, 590-91, 93 So.2d 171 (1957).
The articles Carter sued on had charged that she was associated with the New Alliance Party which had been linked to the neo-fascist political leader, Lyndon H. Larouche. Lawrence alleges that in his deposition, following which Evans made the statements he now sues upon, he had insisted that all of the charges against Carter and her associations with NAP and Larouche were true. We do not doubt he believed his articles true, and that he planned to say so at trial if matters got that far. On the other hand, only the slightest familiarity with the exigencies of litigation would make clear that defending, first, on grounds Lawrence did not write the articles and, second, on grounds Carter was a public figure and was subject to comment and that Lawrence could be held liable only in the event of Carter's proof of actual malice, would be infinitely easier than proving the truth of the statements made in the article.
Without doubt in his comments to National Alliance, Evans intended to be critical of Lawrence and the other defendants in the Carter action [when a lawyer goes outside the normal trial and pre-trial processes and hurls barbs such as these, he enjoys no privilege]. On the other hand, most people go through this life enduring without complaint more than "a few linguistic slings and arrows, many demonstrably unfair[,]" Ferguson, 448 So.2d at 276, and one would think reporters such as Lawrence more accepting of this reality than others. "[O]ur sensitivity to the destructive power of words hardly suggests we assess damages for all bruised feelings." Ferguson, 448 So.2d at 276. "Claims of defamation must rest upon sterner stuff than the innuendo, speculation and conjecture ... [Lawrence] presents to us this day." Fulton v. Mississippi Publishers Corp., 498 So.2d at 1217.
In the end, the question is whether the words Evans uttered, considered in context, would tend to injure Lawrence's reputation, to expose him to public hatred, contempt or ridicule, to degrade him in society and to lessen him in the public esteem or lower him in the confidence of the community. We hold that they do not, reminding Lawrence that sharp commentary is simply not actionable libel. Ferguson, 448 So.2d at 276.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and BLASS, JJ., concur.
ANDERSON, J., not participating.